THOMAS DIXON, JR., v. J. U. G. CASTER.

No. 12,773.   (70 Pac. 871.)

SYLLABUS BY THE COURT.

1. RES JUDICATA — *Pleading.*   A plea of *res judicata* which exemplifies the pleadings, findings of fact, conclusions of law and judgment in the former action, shows thereby the issues and facts determined in such suit, and in whose favor they were determined, without further allegations for that purpose.

2. ———— *Landlord and Tenant — Action for Rent.*   In an action to recover rent stipulated for in a written lease for two years, a defense that a substitution of other property for that described in the written instrument avoided the lease was adjudged invalid.   In a subsequent suit between the same parties for instalments of rent accruing under the lease after the rendition of the former judgment, the defendant claimed that the substitution of property previously litigated operated to change the contract

from one in writing to one in parol, unenforceable under the statute of frauds. *Held*, that the defense was *res judicata*. The facts having been urged in the first suit, all the legal consequences flowing from them are deemed to have been there determined.

Error from Geary district court; O. L. MOORE, judge. Opinion filed December 6, 1902. Affirmed.

### STATEMENT.

J. U. G. CASTER commenced an action in the district court of Geary county against Thomas Dixon, jr., to recover for instalments of rent claimed to be due him on a written lease for two years of real and personal property. The lease described a part of the personal property as "one ten-horse-power Gem No. 2 automatic engine, one twelve-horse-power water-tube boiler," and described the real estate as lot number two in block number eleven of Callen's addition to the city of Junction City, Kan., together with the laundry plant thereon, etc. An amendment to the petition alleged a mistake in the name of the addition to Junction City in which the lot and block mentioned were located, and gave the true designation as Cuddy's addition to the city of Junction City. No reformation of the instrument was asked.

Dixon answered to the effect that the contract for the personal property actually leased to him was not in writing, and hence was repugnant to the statute of frauds, and that, because the personal property actually described in the lease had been replevied from him by persons claiming the same as paramount owners, the lease had been abrogated and determined. Caster replied denying the new matter of the answer, and further set up a plea of former adjudication in a suit for instalments of rent upon the same lease anterior to those set out in the petition. The pleadings,

findings of·fact, conclusions of law and judgment in the former suit were all exemplified, with appropriate allegations concerning them and their relation to the pending suit, with the exception that it was not stated in express words that the issues in the former suit were terminated in favor of Caster. In alleging the identity of the defenses in the two cases, the following language was used: "All of the defenses set up in the answer herein were pleaded and determined in said cause, or might or should have been therein pleaded or determined." The material portions of the findings of facts and conclusions of law made on the first trial, and embodied in the reply, were as follows:

"On the 1st day of June, 1899, J. U. G. Caster, plaintiff, leased to Thomas Dixon, jr., defendant, certain property, real and personal, in Junction City, for the term of two years from that date; the lessee having the option of buying the property at any time within ninety days from the beginning of the term, by the payment of the sum of $1000, less any rent that may have been paid up to the time of the exercise of such option by the lessee. The property, as described in said lease, is described as follows: Lot number two (2), in block number eleven (11), of Callen's addition to the city of Junction City, Kan., together with the laundry plant thereon, and the machinery, fixtures and things belonging to said laundry, as enumerated in schedule 'A,' attached hereto and made a part hereof. The property described in the schedule consists of the automatic engine, and the fixtures thereto, . . . etc., 'together with the sundry necessary attachments to the above machinery and fixtures.' As rent, the lessee was to pay, during the term of two years, the sum of forty dollars per month, commencing on June 1, 1899, and on the first day of each of the next succeeding twenty-three months.

"Some time in July or August, 1899, the lessee erected and equipped a new laundry in another part

of the city, and as soon as it was completed, he closed down the laundry leased from the plaintiff, and removed a part of the fixtures, tools and property described in said schedule 'A' to his said new laundry and has ever since retained the same, and used the same in connection with the running of said new laundry. After the closing down of plaintiff's laundry by the lessee, the creditors of the plaintiff, under some legal proceedings, took from the said leased laundry the engine and some of its attachments, as described in said schedule 'A.'

"Immediately after the creditors of the plaintiff took said engine and fixtures from said laundry as aforesaid, the plaintiff consulted the defendant concerning the substitution of a new engine in said laundry. Suggestion as to the character and construction of a new engine was made by defendant. The plaintiff immediately caused a new engine to be substituted for the one taken by his creditors, and the same was placed in said laundry and ready for use on September 20, 1899, which was about one month from the time the other engine had been taken out.

"From the time the engine was taken out of the laundry by plaintiff's creditors, up to the time the new engine was placed and ready for use, the lessee gave no notice to plaintiff that he, the lessee, had or intended to claim a forfeiture or termination of the terms of the lease, or any eviction from the premises by reason of the removal of said engine from said laundry. Subsequent to the replacement of said engine and fixtures, the defendant informed the plaintiff that he claimed a forfeiture of the lease and that he regarded the lease as terminated. Up to the time of the commencement of this action, the lessee did not make any formal surrender of the lease, nor had he, at any time before the commencement of this action, tendered back to plaintiff the possession of all the personal property so received by him under said lease. The key to the laundry was given to plaintiff's agent at the time of putting in the new engine, and for the purpose of getting into said laundry to replace said engine. The key has ever since been in the possession

of the plaintiff or his agents.   At the time of the com-
pletion of the replacement of said engine, plaintiff ten-
dered the key to the defendant, who refused to accept
same.

"The plaintiff brings this action to recover the
rents due September 1, October 1, and November 1,
1899, under the terms of said lease.   The defendant
sets up in defense that on August 14, 1899, the said
engine and fixtures were taken by plaintiff's creditors
as aforesaid, and by reason thereof the lessee was
evicted from the premises ; and further, as a defense,
that he was, by the removal of said engine, deprived
of the right to exercise his option to purchase said
laundry under the terms of said lease ; and that, by
reason of the premises, said lease was terminated at
the time said engine was removed by the creditors of
said plaintiff from said laundry.   .   .   .

"It is my opinion that the defendant, by his failure
to exercise his right to terminate the lease until the
plaintiff had replaced all the property taken by plain-
tiff's creditors, and by his failure to return or offer to
return to plaintiff the possession of all the property
which came into defendant's possession by the terms
of the lease, has waived his right to terminate the
lease, and that he is liable for the rents, according to
the terms of the lease, from the time the engine and
fixtures were replaced in the laundry plant.

"Judgment will be for the plaintiff, according to
the prayer of his petition.      O. L. Moore, *Judge*."

A motion was made to require the plaintiff to make
the reply more specific by stating what facts were in-
volved in the first case, how they were determined, in
whose favor they were determined, and what determi-
nation was reached by the court in that action as to
the facts in the pending suit.   This motion was over-
ruled, and a demurrer for insufficiency of facts upon
substantially the same grounds as the motion was
filed and overruled.   Upon the trial, testimony as to
the mistake in the description of the real estate,

showing there was no lot two, block eleven, in Callen's addition, but that there was a single lot and block of that description in Cuddy's addition, and that the laundry plant was there located, was admitted, over Dixon's objection. The lease and the record of the former suit were likewise admitted, over objections based upon the non-identity of both the real and personal property involved, and the court excluded testimony offered by Dixon relating to the substitution of the personal property, and the termination of the lease as having been previously litigated. A verdict for the amount of rent accruing after the first trial was directed, and, after his motion for a new trial had been made and overruled, Dixon commenced this proceeding in error.

*Thomas Dever*, for plaintiff in error.
*Roark & Roark*, for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The reply was not vulnerable to either the motion or demurrer. The copies of the pleadings, findings and judgment in the first suit disclosed precisely what facts were there litigated, how they were adjudicated, and against whom the decision ran. Any statement the pleader might have made could not illumine them or add anything to the information they imparted. Both the motion and the demurrer were properly overruled.

The misdescription of the real estate did not destroy the sameness of the property or of the lease involved in the two suits. The subject and the evidence of the dealings between the parties remained constant. The testimony relating to the mistake simply conduced to their identity. Nor was it necessary to reform the lease, since by the aid of extrinsic testimony the prop-

erty was identifiable from its designation as a laundry. (*Mumper v. Kelley*, 43 Kan. 256, 259, 23 Pac. 558.)

The chief contention of plaintiff in error is that a part of the personal property actually involved in the action was the substituted engine and boiler, which were not described in the lease, and which, if possessed at all were held by virtue of a parol agreement, unenforceable under the statute of frauds. Many pages of the brief are devoted to a discussion of the right of plaintiff to recover on the theory that the action was necessarily upon the status created by the verbal agreement. But the plaintiff did not sue on any parol contract. He based his action upon the written lease, and the defendant cannot create for the plaintiff a new cause of action, read it into the petition, cudgel it to death, and then claim he has destroyed the plaintiff's cause. The utmost weight, therefore, which can be given to the facts relating to the substitution of personal property is that they establish a contract in parol which supersedes the writing, and defeats it as a basis of recovery. The findings of fact quoted were based upon, and wholly within, the issues in the first case, and from them it is obvious that the effect of the change in engines and boilers was the moot point in the former suit. In that action plaintiff in error asserted that he was relieved of all liability whatever to his lessor ; now he claims that he is liable only in another way. He seeks merely to deduce an additional consequence from the same state of facts. His effort to do so is belated. He should have drawn all his conclusions in the first litigation, and, having failed to do so, the whole matter is *res judicata*. ( *McEntire v. Williamson*, 63 Kan. 275, 65 Pac. 244, and cases cited ; *Boyd v. Huffaker*, 40 id. 634, 20 Pac. 459, and cases cited.)

There was no error, therefore, in either the admis-

sion or exclusion of evidence, or in overruling the motion for a new trial based upon the action of the court in respect to these matters.

Other questions presented by counsel for plaintiff in error have been examined, and, no error appearing in the record, the judgment of the district court is affirmed.

All the Justices concurring.