No. 34,435

PHOEBE JANE BALDWIN and JOSEPH E. BALDWIN, *Appellees*, v. ROBERT A. BALDWIN, *Appellant*.

(96 P. 2d 614)

Opinion filed December 9, 1939.

*Edward Rooney, Jacob A. Dickinson* and *Edward Rooney, Jr.,* all of Topeka, for the appellant.

*C. C. Stewart* and *Olin K. Petefish,* both of Lawrence, for appellee Phoebe Jane Baldwin.

The opinion of the court was delivered by

.HOCH, J.: This was an action to foreclose a lien on real estate. Plaintiffs prevailed, and defendant appeals.

The question presented is whether the defendant was bound by judgments previously entered in a partition suit which involved a certain antenuptial agreement.

John H. Baldwin and Phoebe Jane Manship were married in 1928. Baldwin had two sons, Joseph E. Baldwin and Robert A. Baldwin, from a former marriage. Prior to the marriage an antenuptial agreement was executed under which Phoebe Jane Manship surrendered such rights as she would otherwise take by marriage in any property which Baldwin had at the time of the marriage or might subsequently acquire. In return it was agreed that—

"Upon the death of said first party, there shall be set aside out of his estate, by his executor or administrator, *a sum sufficient when carefully invested in good securities to produce the sum of six hundred ($600) dollars per annum;* and the income derived therefrom shall be paid by said executor or administrator to said second party in equal semiannual installments for her support and maintenance as long as second party shall live and remain the widow of first party.

"It is understood and agreed that said second party shall not be entitled. to any part of the principal of said sum but to the income only as above set forth." (Italics inserted.)

Baldwin died intestate in May, 1935, possessed of considerable property, and leaving as his heirs the widow and the two sons heretofore named. In August, 1935, Mrs. Baldwin and Joseph E. Baldwin brought action for partition of the real estate owned by the deceased, and the other son, Robert A. Baldwin, was made defendant. Mrs. Baldwin alleged that she owned an undivided one-half interest in the real estate and that the two sons each owned an undivided one-fourth interest as tenants in common. In his answer Robert Baldwin alleged that he and his brother were sole heirs of all of the property of the deceased, subject to the terms of the antenuptial contract heretofore referred to. In their reply the plaintiffs contended that if the court should hold the antenuptial contract to be valid then it should be charged against the entire estate, both real and personal, of the deceased. The cause was duly heard, and on

January 18, 1936, judgment was rendered. The court found that the two sons were tenants in common, each owning an undivided one-half interest in the property, subject to the interest of the plaintiff, Mrs. Baldwin, under the antenuptial contract. As to Mrs. Baldwin's interest the court found:

"The court further finds that the plaintiff, Phoebe Jane Baldwin, by virtue of an antenuptial contract entered into between herself and John H. Baldwin, deceased, is entitled to an annuity of $600 per year, commencing on the death of the said John H. Baldwin and ending at her death or remarriage; that said annuity, by virtue of said contract, is due her annually, and *constitutes and by agreement is a lien against said land* when due and until paid, which said lien shall exist as to each due payment until the death or remarriage of the said Phoebe Jane Baldwin even though foreclosure may have been obtained to satisfy any unpaid annual installments. . . . The court further orders and adjudges that the annuity of $600, by consent and approval of the plaintiffs and defendant, shall be paid as follows:

"One-half by the plaintiff, Joseph E. Baldwin, viz., $300, and one-half, viz., $300, by the defendant, Robert A. Baldwin, and that the same shall be paid to the plaintiff, Phoebe Jane Baldwin, annually, and said payments of $300 per year by the defendant, Robert A. Baldwin, to the plaintiff, Phoebe Jane Baldwin, shall be paid each year and until the death or remarriage of Phoebe Jane Baldwin, and that said sum of $300 per year to be paid on said annuity by said plaintiff, Joseph E. Baldwin, *shall be a lien on his share of the real estate given him by this judgment and shall continue and remain a lien on said real estate* until the death or remarriage of the said plaintiff, Phoebe Jane Baldwin. And that said sum of $300 per year to be paid on said annuity by said defendant, Robert A. Baldwin, *shall be a lien on his share of the real estate* given him by this judgment and *shall continue and remain a lien on said real estate* until the death or remarriage of the said plaintiff, Phoebe Jane Baldwin."

Partition was ordered and commissioners appointed for that purpose.

On January 25, 1936, Joseph E. Baldwin filed a motion for an order dismissing the commissioners for the reason that the parties had come to an agreement concerning the partition of the property, and asked for confirmation of the agreement. Under the agreement Joseph E. Baldwin was to receive two quarter sections, Robert A. Baldwin one quarter section, and Joseph was to pay Robert $1,400 to compensate for the unequal division of the property. The three quarter sections were to be subject to the interest of Mrs. Baldwin, as theretofore ordered by the court. In February, 1936, judgment was entered dismissing the appraisers and confirming the agreement. All parties were represented by their attorneys. The judgment contained this language:

"It is further ordered that the above conveyed interest of the plaintiff, Joseph E. Baldwin, and the defendant, Robert A. Baldwin, *are subject to the interest of the plaintiff, Phoebe Jane Baldwin, as determined by the order of this court on January 18, 1936.*"

Jurisdiction was reserved to make any further orders in the case.

Thereafter each son made annual payments to Mrs. Baldwin of $300, until December 1, 1938, when Robert Baldwin paid into the clerk of the district court the sum of $103.54, together with a report called "Report of Proceeds of Farm for 1938," which report purported to show the net proceeds of the farm for that year to be $103.54. On December 19, 1938, Mrs. Baldwin filed a motion which made reference to the judgments heretofore referred to and alleging that under such judgments she was entitled to an annuity of $300 a year from each son and that the $300 due from Robert Baldwin was a first lien on the real estate set apart to him. She asked the court to determine the balance due her from Robert Baldwin and that unless such amount with interest and costs were paid within five days of the judgment the quarter section set aside to Robert Baldwin be sold subject to her lien "for any and all future annuity payments which may become due under the judgments heretofore rendered." The defendant answered, alleging in substance that Mrs. Baldwin was entitled to $300 only in the event the net income from the land was sufficient to provide such annuity and that "she is not entitled to any of the principal." After hearing upon the motion the the court entered judgment on March 4, 1939. The court found that Robert Baldwin, under the judgments theretofore rendered, had been ordered and adjudged to pay $300 on the first day of every December and that such payments constituted a first lien on the quarter section which he had received under the partition agreement and judgment. The court also found that he was in default in the amount of $199.51, including interest, and it was ordered that unless that amount, together with costs of the action, were paid into court within ten days order of sale of the land should issue. From such order this appeal was taken.

Appellant contends that under a proper construction of the antenuptial agreement Mrs. Baldwin was only entitled to $600 in the event the annual income from the property equalled or exceeded that amount; that in the partition suit no issue was raised on the subject of modification of the contract and that the judgment rendered therein was only intended to allocate between the two sons

an annuity to be charged against the net income each derived from their father's property, and that the court erred in making the excess beyond the income a lien on the land. Appellee contends that the antenuptial contract was properly construed in the partition suit and that in any event the defendant was bound by the judgment therein rendered; that in addition to his quarter section the defendant received $1,400 in cash, and that if the judgment liens were to be set aside it would involve opening up of the whole matter, since Mrs. Baldwin was entitled to $600 a year out of the whole estate, both real and personal.

While we do not think it necessary, in view of the judgments rendered in the partition suit, to discuss possible interpretations of the antenuptial agreement, its principal provisions may be noted. Mrs. Baldwin surrendered all rights in Baldwin's property which she would have had by the marriage. In consideration of this surrender there was to be set aside for her benefit "a sum sufficient when carefully invested in good securities to produce the sum of six hundred dollars per annum." It was further provided that she should not be entitled "to any part of the principal of said sum" so set apart. But if property had been set aside and invested in securities and the income failed to reach $600 a year, there would certainly have been an obligation to set aside additional property, even if it took all of Baldwin's property, both real and personal. What Mrs. Baldwin's interest might have amounted to had there been no antenuptial agreement, we cannot say. The record discloses nothing as to the value of the personal property left by Baldwin. It only discloses that in the partition suit Robert received a quarter section of land and $1,400, while Joseph received two quarter sections. It is not disclosed whether the net income from the two quarter sections which went to Joseph was in excess of $300, nor is it disclosed whether the annual net income of Robert's quarter section was in excess of $300 prior to 1938. However, it is not necessary to determine the income of the various tracts or the amount of the personal property, if any, nor in our opinion does the issue turn upon interpretation of the antenuptial agreement.

Appellant contends that in the partition suit the antenuptial agreement was not before the court for construction or modification, that the interpretation given to it amounted to a modification, and that if the judgments in the partition action be construed as effecting a modification, the judgments went beyond the issues in the

case and are therefore void. We have given careful consideration to this contention, but do not think the point is well taken. Assuming for the moment that the court's interpretation amounted to modification, it still appears that the judgments were rendered after agreement or consent of all parties. The court had jurisdiction of the parties and of the subject matter and the antenuptial agreement was brought into the case by the pleadings. All parties in interest were represented. The defendant's answer set up the antenuptial agreement and alleged that the sons had title to all the property, subject to Mrs. Baldwin's annuity of $600 as long as she should live and remain unmarried. The reply did not specifically deny the validity of the antenuptial contract, but alleged that if it were held to be valid the annuity should be charged against the entire estate of Baldwin, both real and personal. Thereafter, on January 18, 1936, all parties being represented, judgment was rendered directing partition of the real estate and providing "by consent and approval of the plaintiffs and defendant" that $300 should be paid to the widow annually by each of the two sons and that this amount should be a lien upon the land received by each. Appraisers were appointed, but before they made their report all parties agreed as to the manner in which the land should be partitioned, and judgment was rendered on February 3, 1936, in harmony with the agreement. Again, all parties were represented and the judgment was entered upon agreement. Again an obligation to pay the widow $300 annually during her lifetime or until she remarried was made a lien upon the land of each son.

The fact that there was a partition suit pending did not destroy the capacity of the parties to contract. They were competent to make the agreement and the decree of the court recognized and ratified the agreement. That such consent decrees are binding upon the parties has long been established. (34 C. J. 129 et seq.; 15 R. C. L. 643-646.) The general rule has been followed by this court in upholding such judgments. In the early case of U. P. Railway Co. v. McCarty, 8 Kan. 125, the binding effect of a previous decree entered upon consent of the parties was recognized. In an action in 1862 to condemn defendant's land for right of way, judgment had been entered which provided not only for a money payment to the defendant but further provided that the plaintiff was to fence his land. The company did not build the fence, and four years later McCarty brought action to recover damages and was permitted to

introduce the record of the former judgment. The company claimed that the court had no power to render the former decree and that it was void. The court said that question might have been raised on review of the judgment in the former case, but that the record showed that the judgment had been entered by consent of the parties and was binding upon them.

In the case of *Schermerhorn v. Mahaffie,* 34 Kan. 108, 8 Pac. 199, a former consent decree was upheld. The former action involved, *inter alia,* partition of real estate. In the later action it was claimed that the decree theretofore made dividing the property was void because it was not in accordance with the allegations and claims made in the petition, and for other reasons. The court said that while the former decree was probably erroneous in some particulars, no fraud was shown, and refused to set aside the "consent decree."

*Cowle v. Cowle,* 114 Kan. 605, 220 Pac. 211, involved a decree entered upon consent of husband and wife that certain real property in the husband's name should be set off to children who were not parties to the action. Although the court would probably have had no jurisdiction to render such decree had it not been agreed upon (*Melton v. Every,* 105 Kan. 255, 182 Pac. 543), the decree was sustained as a consent decree.

In *Hyde v. Hyde,* 143 Kan. 660, 56 P. 2d 437, a consent decree providing for support of a child had been rendered in a divorce action. Later a separate action for specific performance of the provisions of the decree was brought. Stipulations of the parties modifying the original agreement in some respects were filed and again a decree was entered in harmony with the modifications. About two years later the defendant filed a motion to modify the previous order, which motion was resisted. The court refused to modify, holding in effect that the parties had entered into a contract and that the decree, entered in harmony with their agreement and by their consent, was binding, and that the decree should be enforced until modified in the method provided for in the decree itself.

The cases cited by appellant have been examined. They are distinguished from the instant case because it does not appear in any of them that the decree set aside had been entered upon consent of the parties.

For reasons stated, the defendant was bound by the judgments of January 18, 1936, and February 3, 1936. No appeal was taken from

those judgments. The judgments made the $300 due from the defendant a lien upon the quarter section allotted to him and cannot be disturbed in this action.

The judgment is affirmed.