No. 47,239

Edward T. Neville and Rita Ann Neville, *Appellees,* v. W. H. Hennigh and Bernice Hennigh, F. E. Roberts and Paula Roberts, L. C. Gawthrop and Carol Gawthrop, *Appellants.*

(522 P. 2d 443)

Opinion filed May 11, 1974.

*Edgar Wm. Dwire,* of Malone and Dwire, of Wichita, argued the cause and was on the brief for the appellants.

*Clark R. Nelson,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause, and *Robert H. Nelson,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This is an action to recover unpaid rentals under a 15 year commercial building lease due at the rate of $857.47 per month plus unpaid taxes.

Said lease was entered into by the parties in 1965. The lease provided for a fixed annual rental of $3,200.00 payable in equal monthly installments plus an additional annual rental equal to 12% of the amount expended by the lessors, Edward T. Neville and Rita Ann Neville, in constructing the improvements on the premises as contemplated by the parties when the lease was entered into. The additional annual rental was made payable in equal monthly installments along with the payments due under the fixed annual rental provision of the lease. The lessees, W. H. Hennigh, Bernice Hennigh, F. E. Roberts, Paula Roberts, L. C. Gawthrop and Carol Gawthrop, further agreed to pay all ad valorem taxes and special assessments levied against the premises during the term of the lease. The lease provided that in event the money expended by the lessors for the improvements was not known when the lease payments first became due a reasonable estimate of such expenditure should be used to arrive at a tentative amount of the rent to be paid. As soon as the total cost of improvements could be determined, future rentals were to be based on an accurate computation and the tentative rentals paid would be adjusted. When the lease was entered into the estimated amount of the construction costs for the contemplated improvement was $35,000.00. The improvements were completed on the premises in 1966. The rentals have since been paid on the basis of a total construction cost of $59,080.00.

This is the fourth action between these same parties to recover rentals due under this lease. The first action was filed in February, 1970, to recover unpaid rentals for the period of November, 1969, to February, 1970. The second action was filed in October, 1970, to recover rentals for the period of May, 1970, to October, 1970. The third action was filed in March, 1971, to recover rents for the period of November, 1970, to April, 1971. In each of these three prior actions the lessors obtained judgment for unpaid rentals due under the lease at the rate of $857.47 per month. (12% × $59,080.00 = $7,089.60 ÷ 12 = $590.80 plus base rental of $266.67 = $857.47 per month.)

The present action was filed in July, 1972, to recover unpaid rentals due under the lease for the period from October, 1971, to July,

1972, at the rate of $857.47 per month. In the present action the lessees filed an answer alleging that the plaintiffs (lessors), with intent to deceive, misrepresented the amount of money expended on improvements located on the premises, that the actual construction costs were $39,480.00 and that the monthly rentals due under the lease should have been figured at $660.63 per month. They prayed for a determination of the correct amount of total construction costs and for a further determination that the lease was void by reason of the fraud practiced by the lessors. Defendant-lessees filed an additional cross-petition against the plaintiffs based upon the fraud alleged in their answer and prayed for a return of all previous excess monthly payments for the 83 months in which the $857.47 had been collected by the lessors either through prior judgments or by payments demanded and received.

After taking judicial notice of the files of the court in the three prior actions between these same parties in which the rentals under this lease were adjudged to be $857.47 per month, the trial court determined under the doctrines of *res judicata* and collateral estoppel and on the basis of laches that the defendants were not entitled to pursue their defense and cross-petition. Although the defendants on appeal have specified six points of error these depend upon whether the defense of fraud in misrepresenting the total construction costs was foreclosed to the defendants by reason of the doctrines of *res judicata* or collateral estoppel and laches. We believe an examination of these questions will dispose of all points raised.

When the first action was filed to recover rents under the lease plaintiffs alleged that by virtue of the original written lease the defendants "agreed to pay as rentals thereunder the sum of $857.47 per month." The defendants answered admitting they signed the lease but denying the correctness of the amounts claimed due. At the same time a cross-petition was filed by the defendants against H. Keith Shamburg and H. L. Shamburg, the assignees of the lease. The journal entry of judgment in the first action recited:

"The court is further advised that by agreement of counsel the petition heretofore filed and the motion applicable thereto should be amended to include additional moneys for the months of March 1, 1970, in the amount of $857.47.

"Thereupon, the court finds that the judgment should be entered as set forth in the amendment to the petition and the petition for the months beginning November 1, 1969, each in the amount of $857.47, together with interest thereon at the rate of 6% per annum to this date, said months being from November 1, 1969 to and including March 1, 1970."

A judgment was entered in accordance with these findings. Nothing is shown as to what happened to the cross-petition against the Shamburgs. It should be mentioned that the defendants' answer did not specifically allege fraud against the plaintiffs.

When the second action to recover rents was filed the defendants again filed an answer admitting they signed the lease but denying the correctness of the monthly rentals due and alleging:

"That thereafter, the lease was assigned to the defendants Shamburg; that the cost of the building was never presented or approved by the answering defendants, and they now find that the plaintiffs claim to have expended $59,000.00, when the contract contemplated an expenditure of $35,000; that the answering defendants deny that the plaintiffs expended the sum of approximately $59,000.00, and require that the plainiffs be placed upon strict proof of the cost of such building.

"The answering defendants further deny that they would have approved an increase in the size and cost of the building from $35,000.00 to nearly $60,000.00, and they would not have carried on the terms of the contract with the variance they now find in the alleged cost of the building."

In the prayer of the answer the defendants asked to be released from "any and all liability under the terms of the contract" and "that the contract be canceled and held for naught." The plaintiffs replied alleging that the defendants had been "aware of the expenditures made by the plaintiffs in the construction of said building for a long period of time and have acquiesced therein" with full knowledge of the expenditures. Estoppel was asserted by plaintiffs against the defendants.

The defendants again filed a cross-petition against the Shamburgs based upon a written obligation placed in the assignment whereby the Shamburgs agreed to save and hold the defendants harmless from any further liability under the lease. The journal entry of judgment recites that the defendants by their attorney "consented to a judgment being entered in favor of the plaintiffs and against said defendants for the amounts prayed for in said petition." Judgment was entered in favor of plaintiffs and against the defendants for the amounts prayed for in the petition. In addition the defendants obtained a judgment on their cross-complaint against the Shamburgs for the amount of the plaintiffs' judgment. The amount of both judgments was arrived at by figuring the monthly rentals at $857.47. The Shamburgs did not appear in the action although they were legally served with summons.

When the third action to recover rents due under the lease was filed the defendants answered admitting the signing of the lease,

alleging assignment of the lease to the Shamburgs, denying the amount of rents due and requesting a judgment over and against the Shamburgs for any amounts found due to the plaintiffs.

The journal entry of judgment indicates that the defendants and the Shamburgs were present when the judgments were entered and were represented by different attorneys. The attorneys announced on behalf of their respective clients that judgment might be entered in favor of the plaintiffs and against the defendants for the amounts prayed for in the petition. Again judgment was entered in favor of plaintiffs and against the defendants for the amounts prayed for in the petition and said amount "being the rental for the period November, 1970, to April, 1971, inclusive, each in the amount of $857.47 [per month] and with interest due." The defendants obtained a judgment on their cross-claim against the Shamburgs in the amount of the plaintiffs' judgment.

It should be noted a judgment entered by consent of the parties or their attorneys is as conclusive on matters in issue as one rendered after contest and trial. (*U. P. Railway Co. v. McCarty*, 8 Kan. 125; *Baldwin v. Baldwin*, 150 Kan. 807, 96 P. 2d 614; *Meyer v. Meyer*, 209 Kan. 31, 39, 495 P. 2d 942; 2 A. L. R. 2d, § 12, p. 546.)

Now let us consider the present case, the fourth such action filed. The defendants argue on appeal that the issue of fraud is an affirmative defense, that fraud was never previously raised or considered by the court and that the doctrines of *res judicata* and collateral estoppel do not preclude their raising the issue in the present action. In support thereof they quote the first paragraph of the syllabus in *Stroup v. Pepper*, 69 Kan. 241, 76 Pac. 825. The same reads:

"The rule that a judgment in bar, or as evidence in estoppel, is binding not only as to every question actually presented and considered and on which the court rested its decision, but also as to every question that might have been presented and decided, does not apply to a different cause of action between the same parties, except as to questions shown to have been actually decided in the former action." (Syl. ¶ 1.)

It should be noted the exception mentioned applies to those questions actually decided in a former action. In *Stroup* the first action was an equitable suit in foreclosure. The second action was an action in ejectment. In the first action the allegations regarding the claim were stricken from the pleading and the party was not permitted to litigate the question presented. The case does not support defendants' position in the present case. Here

the defendants were not limited as to the issues actually raised and the present claim of fraud concerns an issue raised and decided in the prior actions, the correct amount of construction costs.

Defendants further contend that a judgment is not conclusive as to matters only incidentally brought into a trial and not substantially in issue. They rely on *Herl v. State Bank of Parsons*, 195 Kan. 35, 403 P. 2d 110. In *Herl* a replevin action had previously been brought by the mortgagee to obtain possession of personal property so the property might be sold under the terms of a chattel mortgage. A second action was later filed by the mortgagor to recover damages from the mortgagee for the wrongful conversion of the property and for an accounting of the proceeds of the sale. The contention was made that the matter of accounting could have been raised and litigated in the former replevin action. It was not raised or litigated in the replevin action and this court held the doctrine of *res judicata* did not prevent the mortgagor from bringing the later action to obtain a full and complete accounting of the proceeds from the mortgage foreclosure sale. However, it was held that issues presented and decided, such as the right to possession and the rights and duties of the mortgagee to sell the property under the mortgage, were *res judicata*. In the opinion it was stressed that the justiciable issues in an ordinary replevin action are quite limited. The decision in *Herl* is not persuasive.

The defendants next argue there can be no estoppel against them because they were ignorant of the fraud until after the fourth action was filed. However, if fraud is properly alleged as a defense in the present case it consists of a representation by plaintiffs that the amount of the expenditures for the construction of the building was $59,080.00. It is difficult for us to accept this contention by the defendants. Under their lease agreement the amount of the rents could only be determined by first determining, by agreement or litigation, the amount of the total expenditures for construction. The building was completed in 1966. The rentals were apparently paid voluntarily during the period from 1966 to November, 1969. In 1970 the amount of construction costs was placed in issue in the first action, and the monthly rent of $857.47 was determined as correct by the court after an agreement was reached between counsel. Under the lease the correct amount of the monthly rent could only be arrived at by first determining the total cost of construction.

In addition when the defendants filed their answer in the second action they specifically denied that the plaintiffs had made expenditures of $59,080.00 in constructing the building and prayed that they, the defendants, be released from payment of rent and that the lease be cancelled. When this issue was placed before the court in the second action defendants did not see fit to denominate the alleged actions of plaintiffs as fraudulent but, fraudulent or not, the defendants had then raised an issue which placed upon their shoulders a duty to inquire into the actual amount of construction costs. Once that issue was adjudicated by the court it could not be relitigated. Defendants' lack of diligence in pursuing this issue in 1970 cannot be justified now, especially since the evidence they seek to introduce comes from Vaughn Shamburg who is the architect who designed the improvements and who was equally accessible in 1970 when the issue was first presented to the court.

The defendants next contend that the doctrines of *res judicata* and collateral estoppel cannot be used to bar defendants' claim of fraud without a trial of factual issues and that these questions, *res judicata* and collateral estoppel, cannot be determined on motion for summary judgment. We have held otherwise. In *Goetz v. Board of Trustees*, 203 Kan. 340, 454 P. 2d 481, it is said:

"The summary judgment procedure (K. S. A. 60-256) can be utilized to invoke the doctrine of collateral estoppel. This has been settled by applying the doctrine of *res judicata* in cases under Rule No. 56, Federal Rules of Civil Procedure (28 U. S. C. A.), which is identical to 60-256, *supra*, in *Lester v. National Broadcasting Company*, 217 F. 2d 399 (9th Cir. 1954), cert. denied 348 U. S. 954, 99 L. Ed. 746, 75 S. Ct. 444; and *Gorski v. Commercial Insurance Co. of Newark, N. J.*, 206 F. Supp. 11 (E. D. Wis. 1962)." (pp. 352, 353.)

The holding in *Goetz* is followed in *Bud Jennings Carpets & Draperies, Inc. v. Greenhouse*, 210 Kan. 92, Syl. ¶ 2, 499 P. 2d 1096.

The doctrine of collateral estoppel is discussed and distinguished from the doctrine of *res judicata* in *Penachio v. Walker*, 207 Kan. 54, 483 P. 2d 1119, where it is said:

". . . The doctrine of collateral estoppel is a bar in an action upon a different claim as to certain matters in issue which were determined in a former judgment. The distinction between *res judicata* and collateral estoppel is based on the distinction between a cause of action and issues in a cause of action. [Citations omitted.]" (p. 57.)

In *Bud Jennings Carpets & Draperies, Inc.*, it is said:

"The doctrine of collateral estoppel may be invoked as a bar to litigating an issue when the following is shown (1) a prior judgment on the merits which

determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity therein and (3) the issue litigated must have been determined and necessary to support the judgment. (*Penachio v. Walker,* supra.) The doctrine was discussed in *Hutchinson Nat'l Bank & Trust Co. v. English,* 209 Kan. 127, 129, 495 P. 2d 1011. The doctrine was recognized in *Green v. Kensinger,* 193 Kan. 33, 39, 392 P. 2d 122, and was applied in *Burnison v. Fry,* 199 Kan. 277, 283, 428 P. 2d 809. . . ." (210 Kan. p. 96.)

These three requirements mentioned above are all present in the present case.

The issues and the decision of the court in *Dixon v. Caster,* 65 Kan. 739, 70 Pac. 871, makes it closely analogous to our present case. In *Dixon* the plaintiff filed the second of two separate suits to recover rents stipulated for in a written lease. In the first suit a judgment for rents was entered and the lease was held to be valid as against allegations of the defendant of improper substitution of property covered by the lease. In the second suit for rents falling due under the same written lease the defendant attempted to have the lease cancelled as invalid under the statute of frauds. The doctrine of *res judicata* (collateral estoppel) was applied and the court states:

". . . In that [first] action plaintiff in error asserted that he was relieved of all liability whatever to his lessor; now he claims that he is liable only in another way. He seeks merely to deduce an additional consequence from the same state of facts. His effort to do so is belated. He should have drawn all his conclusions in the first litigation, and, having failed to do so, the whole matter is *res judicata.* . . ." (65 Kan. p. 745.)

The rule precluding the relitigation of questions which were in issue and adjudicated in a former action is commonly applied to all matters essentially connected with the subject matter of the litigation. It extends to questions necessarily involved in an issue and necessarily adjudicated, or necessarily implied in the final judgment, although no specific finding appears in the journal entry of judgment and although such matters may not have been specifically averred in the pleadings. (*Wharton v. Zenger,* 163 Kan. 745, 186 P. 2d 287.) If a judgment could not have been rendered without deciding a particular matter, that matter will be settled as to all future actions between the parties involving the same subject matter. When a judgment necessarily presupposes certain findings on issues presented these issues are as conclusive as the judgment itself. (*Rucker v. Rafter,* 122 Kan. 91, 251 Pac. 420.) A judgment adjudicates all

matters which are essential to support it and every proposition leading up to the final conclusion of the court upon which such judgment is necessarily based is as effectually adjudicated as the ultimate question which is finally determined in the journal entry of judgment. (46 Am. Jur. 2d, Judgments, § 422, p. 593.)

In the three prior actions to recover continuing rentals due under this same written lease between these same parties the amount of the rentals was based in part upon 12% of the total expenditures necessary to construct the building. In order to support a judgment for rentals at the rate of $857.47 per month it was necessary for the court to first determine and adjudicate the total cost of construction and then apply the 12% figure. This issue was specifically raised by the defendants in the second action and although the plaintiffs were not specifically charged with fraud the basic allegations of the defendants from which fraud is now deduced refer to the same representations from which the construction costs and the amount of monthly rentals were determined.

Another matter should be noted. The defendants recovered judgments over against the Shamburgs in both the second and third actions in amounts equal to the plaintiffs' judgments. Having recovered said judgments based on a monthly rental found due at the rate of $857.47 they are hardly in a position to claim a return of rentals from the plaintiffs while retaining the benefits of their judgments against the Shamburgs based on the larger amount.

Accordingly we hold the defendants are collaterally estopped from relitigating the amount of construction costs on which the amount of monthly rentals depended. Their allegations of fraud and misrepresentation against the plaintiffs come entirely too late. Their consent to the prior judgments in the three actions show a lack of diligence in pursuing the central issue raised by them. They had a duty to inquire into such issue and present all defenses then available. Having consented to the judgments in the three prior actions they are now estopped to question the particular matter upon which the prior judgments necessarily rest, i. e., the amount of construction costs.

The judgment is affirmed.