**In re Ellis Dean BYARD and Donna Beth Byard, Debtors,**

**Charles W. HARRIS, Ind. & d/b/a Sunflower Farms, Plaintiff,**

**v.**

**Ellis Dean BYARD, Defendant.**

**Bankruptcy No. 384–00810.
Adv. No. 384–0267.**

United States Bankruptcy Court,
M.D. Tennessee.

March 15, 1985.

Robert Clive Marks, Marks, Marks & Shell, Clarksville, Tenn., for Charles W. Harris.

B. Gail Reese, Cosner & Waldschmidt, Nashville, Tenn., Ted B. Hay, III, Turner & Ross, Clarksville, Tenn., for defendant.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The plaintiff asks that a state court default judgment against the debtor be given collateral estoppel effect in this dischargeability action under 11 U.S.C. § 523. His argument, based on the "full faith and credit" statute, 28 U.S.C. § 1738, is consistent with recent Supreme Court authority and is sustained.

The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

### I.

Plaintiff Charles W. Harris ("Harris") owns Sunflower Farms, a Wichita, Kansas operation which breeds, raises, trains and shows Tennessee Walking Horses. On October 1, 1981, Harris hired the debtor/defendant Ellis Dean Byard ("Byard") as head trainer and manager. On March 17, 1983, Harris filed a civil action against Byard in the state court for Sedgwick County, Kansas. Byard was personally served with process. A Wichita law firm entered an appearance for Byard but withdrew before the action came to a hearing.

On June 1, 1983, Harris moved for default judgment. The state court took testimony from Harris and entered a Journal Entry of Judgment in which it found; *inter alia:*

7. That the facts alleged in plaintiff's petition and plaintiff's amended petition are true and correct; that the defendant, while in the employ of the plaintiff fraudulently misappropriated and converted funds and property of the plaintiff's for the defendant's personal gain and benefit without authorization of the plaintiff.

8. That the defendant sold personal property owned by the plaintiff and failed to account to the plaintiff for the purchase price of said property in the amount of four thousand ninety-five and no/100 dollars ($4,095).

11. That plaintiff advanced additional sums to defendant for use in the payment of bills and accounts of the plaintiff's which defendant failed to pay and by reason of costs, expenses and losses, defendant is indebted to plaintiff in the additional sum of eight thousand three hundred ninety-two and $^{21}/_{100}$ dollars ($8,392.21).

The court also awarded a judgment against Byard for $43,088.50 as punitive damages.

Byard filed bankruptcy in the Middle District of Tennessee. Harris filed a claim for $86,167.00 and initiated this adversary proceeding objecting to the dischargeability of the judgment under 11 U.S.C. § 523(a)(2) (false pretenses), § 523(a)(4) (embezzlement) and § 523(a)(6) (willful and malicious injury). He asserts that a portion of the judgment, $55,575.71, is supported by factual findings by the Kansas court and is thus entitled to collateral estoppel effect in this dischargeability action pursuant to 28 U.S.C. § 1738.

### II.

28 U.S.C. § 1738 provides in relevant part:

The ... judicial proceedings of any court of any state ... shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such state.

The principles of "full faith and credit" under § 1738 have undergone intensive re-examination and clarification in several recent Supreme Court opinions. The rule as stated by the Supreme Court is that "a federal court must give to a state court judgment the same preclusive effect as

would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, ——, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984). *See also Marrese v. American Academy of Orthopaedic Surgeons*, —— U.S. ——, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *McDonald v. West Branch*, —— U.S. ——, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). In *Migra* at fn. 1, the term "preclusive effect" is explained as follows:

> The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." See Restatement (Second) of Judgments, Introductory Note before ch. 3 (1982); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (1981). Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. See Restatement, supra, § 27. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. See id., Introductory Note before § 24.

In *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 314 (1980), the Supreme Court indicated that only a clear Congressional intent to contravene § 1738 will permit a federal court to deny the preclusive effect of a state court judgment. *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262, 271 (1982)

("an exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal ... repeals by implication are not favored"). An example of clear intent cited by the Supreme Court in *Kremer* is the federal habeus corpus statute, 28 U.S.C. § 2254. 456 U.S. 485 n. 27, 102 S.Ct. 1899 n. 27.

For purposes of *claim* preclusion only, in *Brown v. Felsen*, 442 U.S. 127, 138, 99 S.Ct. 2205, 2212, 60 L.Ed.2d 767 (1979) the Supreme Court found sufficient congressional intent to deny *res judicata* effect to state court judgments in dischargeability litigation. This conclusion is acknowledged if not restated by the Supreme Court in *Marrese*. *See* —— U.S. at ——, 105 S.Ct. at 1334. The Supreme Court in *Brown* reserved, however, the question whether *issue* preclusion remained possible in dischargeability litigation. As the court stated:

> This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions *actually and necessarily decided in a prior suit. Montana v. United States*, 440 U.S. 147, 153, 59 L.Ed.2d 210, 99 S.Ct. 970 [973] (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 58 L.Ed.2d 552, 99 S.Ct. 645 [649 n. 5] (1979); *Cromwell v. County of Sac*, [4 Otto 351], 94 U.S. 351, 352–353, 24 L.Ed. 195 (1877). If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.
>
> Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral-estoppel

effect to a prior state judgment. (emphasis added).

442 U.S. 139 n. 10, 99 S.Ct. 2213 n. 10.

■ The United States Court of Appeals for this circuit has addressed the question reserved in *Brown*. In *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981) the court reviewed conflicting decisions from other courts and held that collateral estoppel is available to preclude relitigation of issues in dischargeability proceedings in bankruptcy. As Judge Kennedy explained:

> Applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of the bankruptcy courts while at the same time encouraging judicial economy. The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion. It must apply the statute to the facts and decide to discharge or not. Therefore, res judicata does not apply to prevent ligitation of every issue which might have been covered in the state court proceeding on the debt. However, that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts.

*Spilman* at 227. *See In re Pitner*, 696 F.2d 447 (6th Cir.1982); *Shelton v. Smith*, 37 B.R. 996 (Bankr. M.D. Tenn.1984). Given that collateral estoppel does apply as a general principle in dischargeability litigation in this circuit, we must now determine what, if any, preclusive effect should be given to Harris' judgment.

■ As demonstrated above, the general rule announced by the Supreme Court is that federal courts use the preclusion principles of the state of judgment in determining the preclusive effects of that judgment in the federal court.[1] The Supreme Court has stated that "§ 1738 does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897, 72 L.Ed.2d at 280; *Marrese*, —— U.S. at ——, 105 S.Ct. at 1332.[2] Applying these concepts strictly, we would determine the issue preclusion effect Harris' default judgment would command in a subsequent action under Kansas law. If Kansas courts would consider the default judgment to preclude relitigation of certain issues then § 1738 would require the bankruptcy court to give full faith and credit to that conclusion.

However, the general rules of application of § 1738 seem to have been ignored by the federal courts in bankruptcy cases. "Instead the bankruptcy courts have applied federally developed rules of issue preclusion often without acknowledgment of the customary practice." Ferriell, *The Preclusive Effect of State Court Decisions in*

---

1. For example, in cases under the Federal Tort Claims Act 28 U.S.C. §§ 2671 et seq., federal courts have generally looked to state law principles of *res judicata* and collateral estoppel in determining the preclusive effect of a prior state court decision in a subsequent federal case. *See Falk v. United States*, 375 F.2d 561, 564 (6th Cir.1967); *Bagge v. United States*, 242 F.Supp. 809 (N.D. Cal.1965); *Johnson v. United States*, 576 F.2d 606, 613 (5th Cir.1978) (different result when prior decision is by federal court).

2. *See* Wright, *Law of Federal Courts*, § 100A at 689–690 (West 4th ed.1983) (hereinafter "Wright"):
Neither issue nor claim preclusion can attach to a judgment unless there was a 'full and fair opportunity' to litigate the claim or issue, but in the context of a state court judgment being relied on in a federal action, this apparently means very little. State rules on what is a 'full and fair opportunity' and on any of the other exceptions to preclusion will be applied, but beyond that as *Kremer* put it 'where we are bound by the statutory directive of § 1738, state proceedings need do no more than satisfy the minimum procedural requirement of the Fourteenth Amendment's Due Process Clause in order to qualify for the full-faith-and-credit guaranteed by federal law.' 456 U.S. at 481, [102 S.Ct. at 1897], 72 L.Ed.2d at 280.

*Bankruptcy (First Installment)*, 58 AM. BANKR.L.J. 349 (Fall 1984) (hereinafter "Ferriell"). The circuit in which we sit is an example. In *Spilman*, discussed above, the Sixth Circuit had before it an Ohio judgment for damages in a personal injury action against the debtor. To determine whether the Ohio judgment was entitled to collateral estoppel effect in a dischargeability proceeding against the debtor, the court did not first determine the collateral estoppel effect of such a judgment under the laws of Ohio, but instead applied a standard developed from other federal cases. *Spilman* at 228 (and cases cited therein). In *Spilman* the court held that collateral estoppel could be applied in bankruptcy dischargeability proceedings to preclude relitigation of factual issues if certain requirements were met. These requirements were "that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Spilman* at 228. This construct of the collateral estoppel

test was applied by the court in *Spilman* without reference to or comparison with the formulation of collateral estoppel principles accepted by the Ohio courts.

This adversary proceeding illustrates the very real effect on litigants of selecting a federal rule for application of collateral estoppel rather than the test which would be applied by the state of judgment. As demonstrated below, it is the law of Kansas that Harris' default judgment would be entitled to issue preclusive effect on the factual issues decided by the state court. However, applying the federal rule articulated in *Spilman* leads to the opposite result. The "actually litigated" requirement is the problem for the plaintiff.[3] The *Spilman* court noted that "if the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court." *Spilman* at 228.[4]

*Spilman* was decided by the Sixth Circuit before the developments in the law of

3. The federal courts have not been completely consistent in their use of language to describe when collateral estoppel is available, even when applying the "federal" standard. For example, in *Brown v. Felsen*, the Supreme Court states the rule that "collateral estoppel treats as final only those questions actually and necessarily *decided* in a prior suit." 442 U.S. 138 n. 10, 99 S.Ct. 2213 n. 10. (emphasis added). In *Kremer* the Supreme Court uses this similar language: "Under collateral estoppel, once a court *decides* an issue of fact or law necessary to its judgment, that decision precludes relitigation ..." 456 U.S. 466 n. 6, 102 S.Ct. 1889 n. 6 (emphasis added). However, in *Marrese* the Supreme Court cites *Kremer* for the proposition that state issue preclusion rules are applied "to determine if a matter *actually litigated* in state court may be relitigated ..." —— U.S. at ——, 105 S.Ct. at 1333. (emphasis added). As noted in the text, the Sixth Circuit in *Spilman* based on ample citation to other federal cases, requires that the issue sought to be precluded must have been *"actually litigated."* 656 F.2d at 228. (emphasis added).

In light of the procedure required by *Marrese,* this court does not address whether the federal rule for application of collateral estoppel requires "actual litigation," or only that the issue have been "decided," nor do we decide whether there is a difference implied by the use of both phrases in the federal decisions.

4. Other federal courts applying federal principles of collateral estoppel have also decided that default judgments fail the "actually litigated" test and cannot be used to prevent relitigation of issues in a dischargeability proceeding. *See, e.g., Matter of Shuler*, 722 F.2d 1253 (5th Cir. 1984); *In re Grainger*, 20 B.R. 7 (Bankr. S.C. 1981). An unreported decision of this court denies summary judgment on this basis. *Iowa v. Mead*, Case No. 383–00046, Adv. No. 384–0082, (Bankr. M.D. Tenn. Oct. 2, 1984). The Ferriell article cites additional cases and collects the policy reasons why default judgments are not given preclusive effect under federal standards in dischargeability proceedings:

> Not only has there been no actual litigation of the issues, but default judgments, like consent and stipulated judgments, are frequently entered for reasons other than the merits of the case. Defendants lacking a sufficient financial incentive, or adequate financial support, for instance, may fail to answer claims brought against them. The rule against giving default judgments issue preclusive effect is particularly appropriate here since a debtor contemplating bankruptcy, and not yet aware of the grounds of nondischargeability, may have little incentive to defend a suit brought in state court.

Ferriell at 364.

full faith and credit signaled by the Supreme Court in *Kremer, Migra, McDonald* and *Marrese*. In the opinion of this writer, were the Sixth Circuit to now consider the issues presented in *Spilman*, the court would approach the collateral estoppel question differently.[5] *Marrese*, the most recent Supreme Court case addressing § 1738, illustrates how federal courts must determine the preclusive effect of state court judgments.

In *Marrese* the Supreme Court considered the *claim* preclusive effect of a state court judgment in a subsequent lawsuit involving federal antitrust claims that were within the exclusive jurisdiction of the federal courts.[6] As stated by Justice O'Connor, "The issue presented by this case is whether a state court judgment may have preclusive effect on a federal antitrust claim that could not have been raised in the state proceeding." Noting firmly that comity and federalism "allow the states to determine, subject to the requirements of the statute and the due process clause, the preclusive effect of judgments in their own courts," [7] the Supreme Court held that the existence of exclusive federal jurisdiction does not alone determine the preclusive effect of a prior state court judgment. Rather, "the basic approach adopted in *Kremer* applies in a law-

---

**5.** In between the decisions of the Supreme Court in *Migra* and *Marrese*, the United States Court of Appeals for the Sixth Circuit decided a claim preclusion case in which the court acknowledged the necessity to first consult the state law of the court of origin of the judgment for which preclusive effect is sought. In *Duncan v. Peck*, 752 F.2d 1135 (6th Cir.1985), the Sixth Circuit applied Ohio law to deny *res judicata* effect to an Ohio judgment in a subsequent federal civil rights case because the court found an absence of identity of subject matter as required by Ohio law for the application of claim preclusion. As the court explained: "[U]nder *Migra* we must first look to Ohio law to determine the preclusive effect of the state court proceedings in this case." In *Duncan* the Sixth Circuit also examined the appropriate preclusive effect to be given to an Ohio default judgment. This examination was carried out consistent with the requirements of *Migra*—by first determining the preclusive effect of a default judgment under Ohio law. *Duncan*, 752 F.2d at 1139. The full faith and credit analysis by Judge Merritt in *Duncan* reflects the developments in the law which took place after *Spilman*.

**6.** In a dissenting opinion in *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), Justice Brennan discussed the possibility that the presence of exclusive federal jurisdiction over the subsequent action may alter the normal rules of full faith and credit. "To be sure, the preclusive effect of a state court determination of a claim within the exclusive jurisdiction of the federal courts is an unresolved and difficult issue. For myself, I confess to serious doubt that it is ever appropriate to accord *res judicata* effect to a state-court determination of a claim over which the federal courts have exclusive jurisdiction; for surely state-court determinations should not disable federal courts from ruling *de novo* on purely legal questions surrounding such federal

claims." *Will* 437 U.S. at 674, 98 S.Ct. at 2563, 57 L.Ed.2d at 519. *See, e.g., Matter of Ross*, 602 F.2d 604 (3rd Cir.1979); *Matter of Merrill*, 594 F.2d 1064 (5th Cir.1979). *See* generally, Wright, Miller, Cooper, *Federal Practice and Procedure: Jurisdiction*, § 4470 (1981).

At least one judge of the United States Court of Appeals for the Third Circuit has suggested that dischargeability litigation in bankruptcy cases is so exclusively federal as to fall outside the ordinary application of full faith and credit principles. In *Matter of McMillan*, 579 F.2d 289 (3d Cir.1978), Judge Gibbons' concurring opinion expresses the view that dischargeability actions are an exception to § 1738. Judge Gibbons argues that the bankruptcy court is the sole forum for the determination of dischargeability, thus "we should admit an exception to the federal duty to recognize court judgments imposed by § 1738." *McMillan*, 579 F.2d at 294. *See also In re Goodman*, 25 B.R. 932, 937 (Bankr. N.D. Ill.1982) which discussed § 1738 and concluded that because only the bankruptcy court could decide the dischargeability issue, it would not give preclusive effect to a state court finding of fraud.

*Marrese* resolves the question raised by Justice Brennan in *Will* and, contrary to *McMillan* and *Goodman*, holds that exclusive federal jurisdiction over the later cause of action does not forbid application of claim preclusion or issue preclusion in the absence of an express or implied repealer of § 1738. *See Marrese* —— U.S. at ——, 105 S.Ct. at 1334. The Sixth Circuit's decision in *Spilman* to allow the application of collateral estoppel to an exclusively federal dischargeability proceeding is consistent with the later holding in *Marrese* that exclusive federal jurisdiction does not by itself preclude application of § 1738.

**7.** The defendant has not argued that there is any due process reason why a default judgment cannot have issue preclusive effect in subsequent litigation on the facts here presented.

suit involving a claim within the exclusive jurisdiction of the federal courts." As the court explained:

> *Kremer* indicates that § 1738 requires a federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment ... To be sure, a state court will not have occasion to address the specific question whether a state judgment has issue or claim preclusive effect in a later action that can be brought only in federal court. Nevertheless, a federal court may rely in the first instance on state preclusion principles to determine the extent to which an earlier state judgment bars subsequent litigation. [citation omitted]. *Kremer* illustrates that a federal court can apply state rules of issue preclusion to determine if a matter actually litigated in state court may be relitigated in a subsequent federal proceeding.

*Marrese* — U.S. at ——, 105 S.Ct. at 1332–1333. Once the preclusive effect of the judgment is determined applying the law of the state of origin, then *Marrese* requires a second test: if the state of origin would give preclusive effect to the judgment at issue, then the court must determine whether any federal statute expressly or impliedly excepts to the normal application of § 1738. —— U.S. at ——, 105 S.Ct. at 1334.

To apply *Marrese* to the facts of this adversary proceeding, we must first determine what issue preclusive effect the courts of the State of Kansas would give to Harris' default judgment. If Kansas law indicates relitigation of any issue would be barred, then it will be necessary for us to determine if an exception to § 1738 should apply.

■ Kansas courts have developed the following rule for application of collateral estoppel:

The doctrine of collateral estoppel may be invoked as a bar to litigating an issue when the following is shown (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity therein and (3) the issue litigated must have been determined and necessary to support the judgment.

*Neville v. Hennigh*, 214 Kan. 681, 522 P.2d 443 (1974).

The *Neville* case itself shows that the phrase "the issue litigated" in requirement (3) does not mean a full contest and trial. The defendant in *Neville* was estopped from raising an issue which was a necessary part of a prior *consent* judgment. The court noted that the defendants had "a duty to inquire into such issues and present all defenses then available" in the prior action. 522 P.2d at 449.

In *Frey v. Inter-state Savings and Loan Ass'n. of Kansas City*, 226 Kan. 419, 601 P.2d 671, 672 (1979), the court held that "the doctrine of collateral estoppel may be invoked only as to questions and issues shown to have been *actually decided* in the prior action." (emphasis in original).

Default judgments in Kansas are apparently given the same effect as full-blown trials as to the issues decided in the judgment. "A judgment by default upon personal service of summons upon the defendant is as conclusive against him upon every matter admitted by the default as if he personally appeared and contested the plaintiff's right to recover." *Miller v. Miller*, 107 Kan. 505, 192 P. 747 (1920).[8]

■ We conclude that in Kansas, Harris' default judgment would preclude Byard from relitigation of the issues "determined and necessary" to that judgment.[9]

---

**8.** No claim is made that there is any defect in process or jurisdiction in Harris' Kansas judgment.

**9.** The use of default judgments for issue preclusion purposes has been accepted by many

courts. *See* generally ANNOT. 77 A.L.R.2d 1410. In *Overseas Motors, Inc. v. Import Motors Ltd., Inc.*, 375 F.Supp. 499, 516 (E.D. Mich.1974) *aff'd*, 519 F.2d 119 (6th Cir.1975) the court stated the following:

Having determined that Kansas law would accord issue preclusive effect to Harris' default judgment, we must now apply the second test set forth in *Marrese:* should an exception to § 1738 apply.[10] As explained by the Supreme Court:

Resolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. Our previous decisions indicate that the primary consideration must be the intent of Congress.

— U.S. at ——, 105 S.Ct. at 1335.

In the opinion of this court, there is nothing in the Bankruptcy Code or Congressional statements of intent in the enactment of § 523 indicating that some kinds of state court judgments—those that are fully and actually litigated by the state court—can have issue preclusive effect in § 523 litigation but other kinds of state court judgments cannot—for example, a default judgment like the one here at issue. There is no compelling statement of federal bankruptcy law which expressly or impliedly excepts to the normal operation of § 1738 where the state court judgment for which issue preclusive effect is sought is a default judgment. The implied repealer of § 1738 in bankruptcy proceedings recognized by the Supreme Court in *Brown* and acknowledged by the Supreme Court in *Marrese* was restricted by the Supreme Court in *Brown* to *claim* preclusion. Since the decision in *Brown,* the implied repealer exception to § 1738 has been very narrowly construed by the Supreme Court. *See, e.g., Kremer,* 456 U.S. at 468–469, 102 S.Ct. at 1890–1891.

There is nothing about the issues here sought to be precluded which suggests intervention of any strong federal bankruptcy policy prohibiting application of § 1738. Fraud, conversion and misapplication of funds are issues well within the regular competence and experience of state courts. Under these circumstances, it is the holding of this court that there is no compelling statement of federal bankruptcy law which would expressly or impliedly forbid application of § 1738 to give issue preclusive effect to this default judgment.

■ It is important to state the narrowness of this holding. Applying the proce-

---

Collateral estoppel applies only to those issues which were "actually" or "fully litigated" in the prior action. However, this rule does not refer to the quality or quantity of argument or evidence addressed to an issue. It requires only two things: first, that the issue has been effectively raised in the prior action, either in the pleadings or through development of the evidence and argument at trial or on motion; and second, that the losing party has had "a fair opportunity procedurally, substantively, and evidentially" to contest the issue. The general rule therefore is that subject to these restrictions default judgments do constitute res judicata for purposes of both claim preclusion and issue preclusion (collateral estoppel). (footnotes omitted).
*See also Lawhorn v. Wellford,* 179 Tenn. 625, 168 S.W.2d 790, 792 (1943) ("A judgment taken by default is conclusive by way of estoppel in respect to all such matters and facts as are well pleaded and properly raised, and material to the case made by declaration or other pleadings …").

**10.** It could be argued that in *Spilman* the Sixth Circuit indirectly recognized a statutory exception to § 1738 where collateral estoppel effect is argued for a state court default judgment. This interpretation would require a profoundly expansive reading of *Spilman.* Firstly, *Spilman* does not cite or discuss § 1738, though the opinion does address both claim preclusion and issue preclusion in the context of dischargeability litigation in bankruptcy. As noted above, the Sixth Circuit did not have the benefit of *Marrese* and thus the opinion contains no discussion of the preclusion principles applicable in the state courts of Ohio and no discussion of the standards for finding an express or implied repealer of § 1738. The state court judgment at issue in *Spilman* was not a default judgment and thus the comments on the preclusive effect to be given to default judgments in dischargeability litigation were not necessary to the decision. Finally, the basis for the conclusion in *Spilman* that default judgments are not entitled to issue preclusive effect in dischargeability proceedings is the general federal rules of collateral estoppel—now excluded from the calculus by the Supreme Court—and not an express or implied repealer of § 1738 by federal bankruptcy law as is now required by *Kremer, Marrese,* etc. It is thus the conclusion of this court that *Spilman* cannot be read for the proposition that the Sixth Circuit has recognized a specific statutory exception to § 1738 for default judgments in dischargeability litigation.

dure outlined in *Marrese* we today hold that where a state court would give issue preclusive effect to a default judgment, § 1738 requires the bankruptcy court to give that same effect to preclude relitigation of issues in a § 523 proceeding to precisely the same extent that the state court would.[11]

An appropriate order will be entered.

11. This adversary proceeding is set for trial on the merits on June 14, 1985. If the parties are unable to stipulate before trial the issues pre- cluded by the Kansas judgment and the issues remaining for trial, the court will address these questions at the opening of proof.