**In re Harold George KURTZ, Debtor.**

**Jeanette MONTGOMERY, Plaintiff,**

v.

**Harold George KURTZ, Defendant.**

Bankruptcy No. 93–48388–S.
Adv. No. 93–5295–S.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Aug. 9, 1994.

William Nivan Renwick, Detroit, MI, for plaintiff.

Eric H. Clark, Old Redford, MI, for defendant.

## *OPINION DENYING MOTION FOR SUMMARY JUDGMENT*

WALTER SHAPERO, Bankruptcy Judge.

*Background and Facts*

On June 23, 1988, Jeanette Montgomery ("Plaintiff") obtained a default judgment against Harold George Kurtz ("Debtor" or "Defendant") in the amount of $34,377.00 in the 46th District Court for the State of Michigan. The state court Complaint alleged Fraud, Misrepresentation, Breach of Contract (Count I) and Negligence (Count II) arising from statements Defendant allegedly made to Plaintiff regarding the condition of a house Plaintiff was considering purchasing and did, in fact, purchase. Defendant's misrepresentations concerned, among other

things, the condition of the basement, yard, driveway, screens, doors, and windows. (State Court Complaint ¶ 17).

The state court default judgment was entered on or about June 23, 1988. Though both parties have requested the transcript of the hearing at which the default judgment was entered, it is apparently incapable of being reproduced (even if it exists) and was thus not in evidence before this Court.

The Debtor filed for Chapter 7 bankruptcy on August 3, 1993. On December 1, 1993, Plaintiff filed this adversary proceeding to determine the non-dischargeability of the state court default judgment. The Plaintiff claims that she is entitled to summary judgment in this adversary proceeding pursuant to § 523(a)(2)(A) [1], claiming that the issue of non-dischargeability of Defendant's debt resulting from Defendant's fraud, misrepresentation (§ 523(a)(2)(A) actions), and breach of contract has been "actually litigated", and therefore, relitigation is barred by collateral estoppel. Defendant argues that summary judgment should be denied because the issues of fraud and misrepresentation were not "actually litigated" in the prior proceeding.

*Law and Discussion*

The primary issue in this case concerns whether a state court default judgment qualifies as "actually litigated" for purposes of collateral estoppel.

There has been great controversy concerning whether collateral estoppel bars the relitigation of issues, previously determined pursuant to a state court *default* judgment, necessary to support non-dischargeability actions under § 523. This Court has decided to apply a two-part analysis concerning whether a state court default judgment can be used to collaterally estop the bankruptcy courts from determining issues relevant to § 523 nondischargeability actions. This Court must determine: (1) whether federal

---

1. § 523(a)(2)(A) states:
   (a) A discharge under section 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

courts must grant full faith and credit to state court judgments and, therefore, have to rely on state court determinations concerning factors influencing dischargeability; and (2) if federal courts do not have to grant full faith and credit then what types of state court determinations, if any, fulfill the "actually litigated" requirement of collateral estoppel.

### Must Federal Courts Grant Full Faith and Credit to State Court Judgments?

Article IV, section 1 of the Constitution requires that each state give full faith and credit to the public acts, records, and judicial proceedings of every other state. The Constitution also allows Congress to enact laws which prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof. 3 James Wm. Moore, *Moore's Manual* ¶ 30.06 (1992). Congress exercised this power in 28 U.S.C. § 1738 which states, in pertinent part,

> Such Acts, records and judicial proceedings or copies thereof so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

In other words, section 1738 imposes a statutory duty upon federal courts to accord full faith and credit to the judicial proceedings of state courts. In this respect, § 1738 goes beyond the constitutional requirement of full faith and credit. Thus, while the duties of the state courts are constitutional, the duties of the federal courts are statutory. Because federal rules concerning full faith and credit derive from the statute, they are subject to Congressionally mandated exceptions so long as they relate to matters within the powers of Congress, subject to the limitations imposed by the Due Process Clause of the Fifth Amendment. This power to permit relitigation in the federal courts of issues disposed of by the state courts has been recognized by the Supreme Court in *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985), *reh'g denied,*

471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985). Moore et al., *supra*, ¶ 30.06.

The Supreme Court in *Marrese* found that the full faith and credit statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered" unless there exists an exception to 28 U.S.C. § 1738. *Marrese*, 470 U.S. at 380–81, 105 S.Ct. at 1331–32. Many courts have held that § 1738 does not apply to state court proceedings used as the basis for dischargeability actions. For example, in *In re Houtman*, 568 F.2d 651 (9th Cir.1978), the Ninth Circuit held that:

> The 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy courts the exclusive jurisdiction to determine dischargeability. As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act. (footnote omitted).

> \*   \*   \*   \*   \*   \*

> To give collateral estoppel effect to prior state court factual findings would impair the exercise of the expertise of the bankruptcy court. The determination of nondischargeability should remain an exclusive function of the bankruptcy court unimpeded by the refinements of collateral estoppel by state court judgments.

*Houtman*, 568 F.2d at 653, 654, n. 2.

Additionally, the Supreme Court in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) found that dischargeability proceedings are to be decided by the federal bankruptcy courts because they deal with very special federal interests. The Supreme Court in *Brown* stated:

> If a state court should expressly rule on § 17 [now § 523] questions, then giving finality to those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court. The 1970 amendments eliminated post-bankruptcy state-court collection suits as a means of resolving certain § 17 dischargeability questions. In those suits, creditors had taken advantage of debtors who were

unable to retain counsel because bankruptcy had stripped them of their assets. Congress' primary purpose, however, was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them. By the express terms of the Constitution, bankruptcy law is federal law, U.S. Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the amendment described the bankruptcy court's jurisdiction over these § 17 claims as "exclusive." S.Rep. No. 91–1173, p. 2 (1970). While Congress did not expressly confront the problem created by prebankruptcy state-court adjudications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these § 17 questions away from bankruptcy courts and forces them back into state courts. See In re McMillan, 579 F.2d 289, 293 (3rd Cir.1978); In re Houtman, 568 F.2d 651, 654 (9th Cir.1978). (footnote omitted) (additional citations omitted).

Brown, 442 U.S. at 135–36, 99 S.Ct. at 2211–12.

Viewpoints opposing an exception to the application of full faith and credit of state court judgments to bankruptcy court nondischargeability proceedings are found in In re Byard, 47 B.R. 700 (Bankr.M.D.Tenn.1985) and In re Nourbakhsh, 162 B.R. 841 (9th Cir. BAP 1994). The Byard court stated that the exception to full faith and credit is limited:

There is no compelling statement of federal bankruptcy law which expressly or impliedly excepts to the normal operation of § 1738 where the state court judgment for which issue preclusive effect is sought is a default judgment.

\* \* \* \* \* \*

The implied repealer of § 1738 in bankruptcy proceedings recognized by the Supreme Court in Brown and acknowledged by the Supreme Court in Marrese was restricted by the Supreme Court in Brown

to claim preclusion. Since the decision in Brown, the implied repealer exception to § 1738 has been very narrowly construed by the Supreme Court.

Byard, 47 B.R. at 707 (citations omitted). The court in Nourbakhsh concurs with Byard. In Nourbakhsh, the court declined to create an exception to § 1738 and distinguished itself from Brown. The Nourbakhsh court argues that in Brown the court did not apply collateral estoppel because the parties settled and because the bankruptcy court was the first court to determine the issue of fraud. In Nourbakhsh, however, the bankruptcy court did apply collateral estoppel because the bankruptcy court did not determine the issue of fraud for the first time, a complaint for fraud was filed, both sides were present at a hearing to determine personal jurisdiction and the entry of default, and interrogatories were answered.

█ Despite the arguments to the contrary, this court finds that there is a judicially created exception to § 1738 for dischargeability actions. Therefore, a federal court may choose not to grant full faith and credit to state court judgments for use as the basis for nondischargeability.

The Sixth Circuit in Spilman v. Harley, 656 F.2d 224 (6th Cir.1981) apparently recognizing that federal courts may choose not to grant full faith and credit, did not grant full faith and credit to the state court's findings concerning Defendant's alleged willful or malicious conduct, holding that the state court record present before the bankruptcy court was vague and incomplete. For this same reason, the Spilman court refused to apply the doctrine of collateral estoppel because it was unclear whether the state court judgment had been "actually litigated", a necessary element for the application of collateral estoppel.[2]

In the Spilman case, as in the instant case, the dispute concerned the interpretation of the phrase "actually litigated" for purposes of applying the doctrine of collateral estoppel

---

**2.** The application of collateral estoppel requires that three elements be met:

(1) that the precise issue in the later proceedings have been raised in the prior proceeding,

(2) that the issue was actually litigated, and

(3) that the determination was necessary to the outcome.

Spilman, 656 F.2d at 228.

to prevent the relitigation in federal court of issues determined in the state court. In its discussion of the actually litigated requirement, the *Spilman* court states, "[i]f the important issues were not actually litigated in the prior proceeding, *as is the case with a default judgment,* then collateral estoppel does not bar relitigation in the bankruptcy court." *Spilman,* 656 F.2d at 228 (citations omitted) (emphasis added).

That language would seem to require the conclusion that no default judgment can satisfy the "actually litigated" requirement. In the *Spilman* case, a state court default judgment was not, however, involved. Rather *Spilman* apparently concerned some form of summary judgment or judgment on the pleadings. Because the *Spilman* court did not have before it a complete state court record and because the basis for the state court judgment was not shown to be the same as the non-dischargeability standard under the Bankruptcy Code, the *Spilman* court overturned a lower court's collateral estoppel conclusion and returned the case to the Bankruptcy Court to review the entire record.

In 1985, the Bankruptcy Court in *In re Eadie,* 51 B.R. 890 (Bankr.E.D.Mich.1985), distinguished itself from *Spilman* and found that collateral estoppel can apply to default judgments. The *Eadie* court relied on the *Byard* decision which held that "[p]ursuant to § 1738, the full faith and credit clause, a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Byard,* 47 B.R. at 701 (other citations omitted). The *Byard* Court stated that federal courts in bankruptcy cases, including the court in *Spilman,* had overlooked this general rule and had applied federally developed rules of issue preclusion without regard to the relevant state law, which can have significant effects on the outcome of cases. *Byard,* 47 B.R. at 703–04. Thus, the *Byard* court predicted that if the Court of Appeals were to consider the issues presented in *Spilman* in light of recent developments in the law of full faith and credit, the court would address

the collateral estoppel question differently. *Byard,* 47 B.R. at 704–05.

The Court in *Eadie,* adopting the reasoning found in *Byard* applied the Michigan law for preclusion, which permits collateral estoppel "only where ... the parties have had a full opportunity to litigate the ultimate issues in the former action." *Id.* at 894. Michigan courts have also found that "collateral estoppel applies to default judgments; however, the default judgment is conclusive only as to those matters essential to support the judgment." (citations omitted). *Id.*

The court in *Eadie* based its decision on the state court case of *Braxton v. Litchalk,* 55 Mich.App. 708, 223 N.W.2d 316 (1974). In *Braxton,* the Michigan Appeals Court found that:

> the entry of a default judgment is equivalent to an admission by the defaulting party to all of the matters well pleaded. *Lesisko v. Stafford,* 293 Mich. 479 [292 N.W. 376] (1940) ... In view of the extensive attention given this matter by the trial court, the final entry of default judgment and failure of defendant to appeal therefrom, we must accept as true the matters pleaded ... Our conclusion in this regard should not be construed as going so far as to hold that every default judgment, no matter under what circumstances it is taken, may result in collateral estoppel, but only that in the instant case the issues were sufficiently litigated to make the doctrine of collateral estoppel apply.

*Braxton,* 223 N.W.2d at 320.

In 1986, however, the *Spilman* criteria was again followed in *Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986) which reversed the Bankruptcy Court's granting of collateral estoppel in a dischargeability action and sent the case back to the Bankruptcy Court for review of the entire state court record.

■ This Court finds that, if *Spilman* is to be taken literally, as a matter of law there cannot be any default judgment that meets the "actually litigated" test. Because *Spilman* sets forth the law in this Circuit, the Plaintiff's motion must be denied on that ground. *Laudani* presented the Sixth Circuit with an opportunity to consider those

subsequent holdings (as referred to in *Eadie* as necessitating a different result). Yet *Laudani* essentially reaffirmed the *Spilman* principle, albeit in a case which again like *Spilman* did not itself involve a default judgment. On balance, proper respect for precedent, and in particular, the literal words of the Sixth Circuit requires this Court to therefore conclude that default judgments per se cannot be the basis for collateral estoppel.

■ One might conclude, however, that *Spilman* should not to be taken literally (at least insofar as default judgments are concerned) either because *Spilman* did not itself deal with a default judgment, but rather referred to such in the course of enunciation and applying general principles, or by reason of the rationale set forth in *Eadie*. If *Spilman* is not to be taken literally, there may be some default judgments that qualify as a basis for application of collateral estoppel principles. Given the Sixth Circuit precedent, it is clear that the use of default judgments as the basis of collateral estoppel should only be permitted in cases where:

(1) The entire record in the state or other court leading to the default judgment involved must have been before the Bankruptcy Court; and

(2) That record in the state or other court must not be ambiguous as to the facts and theories upon which the default judgment was granted, and those facts must have been necessary to the outcome; and

(3) The basis for the state or other court judgment must be the same as that relied on for non-dischargeability under the Bankruptcy Code; and,

(4) At the very least the procedure which led to the entry of the default judgment in the state court must have strictly followed that court's applicable rules. In Michigan that applicable rule is MCR 2.603(B)(3) which states: [3]

(3) *Default Judgment Entered by Court.* In all other cases the party entitled to a judgment by default must apply to the court for the judgment.

\* \* \* \* \* \*

(b) If, in order for the court to enter judgment or to carry it into effect, it is necessary to

(i) take an account,

(ii) determine the amount of damages,

(iii) establish the truth of an allegation by evidence, or

(iv) investigate any other matter,

the court may conduct hearings or order references it deems necessary and proper, and shall accord a right of trial by jury to the parties to the extent required by the constitution.

Thus, for a Michigan state court default judgment to have collateral estoppel effect, the court must have, among other things, evidence establishing the truth of the allegations in the complaint being used as the basis for the non-dischargeability action in the Bankruptcy Court when granting the default judgment.

In saying the foregoing this Court necessarily concludes that "actually litigated" means something more than a mere opportunity to litigate. If any default judgment *per se* can satisfy the "actually litigated" requirement, then it would appear that every case would meet the "actually litigated" standard. Additionally, if actually litigated were interpreted to mean "mere opportunity to litigate", as is required for *res judicata*, then the elements of collateral estoppel would not expressly require "actual litigation." The words "actually litigated" taken on their plain meaning cannot reasonably be construed to mean a "mere opportunity to litigate." *In re Nourbakhsh*, 162 B.R. 841, 847.

In this case, Plaintiff argues that collateral estoppel should apply because: (1) the state court Complaint was well-pleaded; (2) there is in evidence an affidavit of state court judge, Judge Stephen C. Cooper, which supports the contention that the court considered the relevant issues; and (3) although the record was not, and cannot be, produced,

---

**3.** Default judgments which can be entered by the clerk under MCR 2.603(B)(2) do not appear to implicate non-dischargeability issues under § 523.

the non-production of the record was not the fault of either party and the indicated affidavit by Judge Cooper compensates for that loss.

Defendant, on the other hand, argues that the state court case was not "actually litigated" and the affidavit of Judge Cooper does not shed light on what happened in the state court proceedings. In Defendant's deposition of Judge Cooper, the presiding Judge in the state court case (*Jeanette Montgomery v. K.T. Realty* (case number 85–2339)), the Judge stated that he had no independent recollection of the case (Deposition, p. 4–5), it was a no-appearance default so there was no trial (Deposition, p. 7), no actual testimony was presented (Deposition, p. 9–10), and there were no specific findings of fraud or misrepresentation (Deposition, p. 10–11).

In this case, it is unclear whether the Plaintiff established his case by evidence at the state court level because the complete record cannot be produced by either party. The affidavit of Judge Stephen C. Cooper is not sufficient to establish compliance with MCR 2.603(B)(3) or to meet this Court's enunciated standard. Furthermore, the Plaintiff did not provide sufficient evidence to meet the actually litigated standard nor did she submit the state court proceedings to the bankruptcy court as required.

Pursuant to the plain language of *Spilman* as well as the standards set forth in this Opinion, this Court finds that Plaintiff's default judgment does not qualify as actually litigated for purposes of collateral estoppel, and therefore, Plaintiff's Motion for Summary Judgment is DENIED.

Defendant shall submit an appropriate order.