**Brian Strathearn WOOD, Appellant,**

**v.**

**DEALERS FINANCIAL SERVICES, INC., Appellee.**

**In the Matter of DEALERS FINANCIAL SERVICES, INC., Plaintiff,**

**v.**

**Brian Strathearn WOOD, Defendant.**

**Civil Action No. 95–40447.**
**Bankruptcy No. 95–44081–R.**
**Adversary Proceeding No. 95–4647–R.**

United States District Court,
E.D. Michigan,
Southern Division.

July 31, 1996.

Alan C. Harnisch, Harnisch & Hohauser, Bingham Farms, MI, for Dealers Financial Services, Inc.

Danette P. Gambrell, UAW–GM Legal Services Plan, Warren, MI, for Brian Strathearn Wood.

## ORDER

GADOLA, District Judge.

In 1987, the appellee, Dealer Financial Services, Inc. (hereinafter "DFS"), filed a complaint in the Oakland County Circuit Court alleging conversion, misappropriation, fraud and conspiracy to defraud against the appellant, Brian Strathearn Wood. Wood failed to answer this complaint, and a default judgment was entered against Wood on or about April 15, 1988.

Approximately six years later in 1994, Wood filed a motion to set aside default and quash writs of garnishment in the Oakland County Circuit Court. This motion was denied. Wood then filed for Chapter 7 bankruptcy on April 19, 1995. DFS initiated an adversary proceeding arguing that its default judgment was nondischargeable pursuant to 11 U.S.C. § 523.[1] DFS then filed a motion for summary judgment arguing that Wood was collaterally estopped from litigating issues underlying the previous default judgment. The bankruptcy court agreed with DFS and granted summary judgment on December 8, 1995. The court held that Wood was collaterally estopped from litigating the issue of whether the debt was based upon fraud, and accordingly, that the debt was nondischargeable as a matter of law. On December 18, 1995, Wood filed an appeal from the bankruptcy court's final order granting summary judgment. For the following reasons, this court will reverse and remand the present case for further proceedings consistent with this opinion.

### I. Statement of Facts

In 1986, the appellee, DFS, discovered an apparent scheme by one of its employees to defraud it. The employee was allegedly fraudulently obtaining checks drawn from DFS's account and giving them to Wood for his personal use. DFS found one fraudulent check made out to Wood for $300. Based on this, in 1986 DFS included Wood in an action to recover the misdirected funds.

DFS attempted to serve the complaint upon Wood by mailing it to his father. Wood's father, in a sworn affidavit, stated that his son did not live there any longer, and was living somewhere "up north" with friends. However, Wood's father later spoke with his son by telephone and informed him that attempts to serve Wood were being made. The Oakland County Circuit Court found this phone call sufficient notice of the complaint to enter the default judgment.

DFS was unable to locate Wood to collect on the default judgment from 1988 through 1994. However, in 1994, Wood filed a motion to set aside the default judgment and quash writs of garnishment after discovering that his bank account had been garnished. On December 7, 1995, the Oakland County Circuit Court denied Wood's motion after a full hearing, finding that Wood had notice of the lawsuit and had waived his right to defend that action. Wood then filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. In response, DFS initiated an adversary proceeding objecting to the discharge of its default judgment, followed by the motion for summary judgment which was granted by the bankruptcy court.

### II. Discussion

The issue is whether a bankruptcy court may apply collateral estoppel principles to a default judgment obtained pursuant to Michigan law. As the court in *In re Kurtz*, 170 B.R. 596 (Bankr.E.D.Mich.1994) recognized, "[t]here has been great controversy concerning whether collateral estoppel bars the relitigation of issues, previously determined pursuant to a state court default judgment, necessary to support nondischargeability actions under § 523." *In re Kurtz*, 170 B.R. 596, 597 (Bankr.E.D.Mich.1994).

---

1. 11 U.S.C. § 523 provides in part:

   (a) A discharge under section 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—

   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

In this case, the bankruptcy court held that 28 U.S.C. § 1738 [2] required it to follow the state law of Michigan in determining the preclusive effect of a Michigan Circuit Court default judgment. The bankruptcy court then concluded that under Michigan law, collateral estoppel precluded the parties from relitigating the allegations made in the complaint from which the default judgment was granted.

## A. 28 U.S.C. § 1738

Article IV, section 1 of the Constitution requires that each state give full faith and credit to the public acts, records, and judicial proceedings of every other state. Similarly, 28 U.S.C. § 1738 imposes a statutory duty upon federal courts to accord full faith and credit to the judicial proceedings of state courts. In the context of determining the preclusive effect to be given the judgment of a state court, § 1738 "directs a federal court to refer to the preclusion law of the State in which judgment was rendered" unless there is an exception to § 1738. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985) *reh'g denied,* 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985); *In re Kurtz,* 170 B.R. 596, 598 (Bankr.E.D.Mich.1994). Thus, the first issue this court must decide is whether an exception to § 1738 exists for the determination by a bankruptcy court of the dischargeability of a debt under § 523. In other words, must a bankruptcy court, in determining the dischargeability of a debt, use state law to decide whether to give preclusive effect to a state default judgment.

In holding there was not an exception to § 1738 for bankruptcy courts determining the issue of dischargeability, the bankruptcy court in the present case relied on *In re Eadie,* 51 B.R. 890 (Bankr.E.D.Mich.1985). *Eadie* directly relies on *In re Byard,* 47 B.R. 700 (Bankr.M.D.Tenn.1985), which expressly held that no such exception exists. The *Byard* court stated that "there is no compelling statement of federal bankruptcy law which expressly or impliedly excepts to the normal operation of § 1738 where the state court judgment for which issue preclusive effect is sought is a default judgment." *Byard,* 47 B.R. at 707. *See also In re Nourbakhsh,* 162 B.R. 841 (9th Cir. BAP 1994). In relying on these cases, however, the bankruptcy court ignored more controlling, and more persuasive, precedent holding that bankruptcy courts making dischargeability determinations are excepted from § 1738's requirement that they follow state preclusion law.

In discussing whether res judicata applies to dischargeability actions, the Supreme Court in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), generally stated that dischargeability proceedings should be decided by federal bankruptcy courts. *Brown,* 442 U.S. at 135–36. In its discussion of the 1970 amendment to § 17 (now § 523), the *Brown* Court found that "[b]y the express terms of the Constitution, bankruptcy law is federal law, U.S. Const, Art I, s 8, cl 4, and the Senate Report accompanying the amendment described the bankruptcy court's jurisdiction over these § 17 claims as exclusive. S Rep No. 91–01173, p 2 (1970)." *Id.* "If a state court should expressly rule on § 17 questions, then giving finality to those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court." *Id. Brown* can reasonably be interpreted as suggesting that bankruptcy courts should not be forced by state preclusion law to give preclusive effect to state court judgments with respect to dischargeability issues.

The Sixth Circuit embraced *Brown's* view that dischargeability determinations are the exclusive jurisdiction of federal bankruptcy courts in *Spilman v. Harley,* 656 F.2d 224 (1981). "The power to determine dischargeability was granted to bankruptcy courts by the 1970 Amendments to the Bankruptcy Act. Congress intended to take the determinations governed by 11 U.S.C. § 523(c) away

---

2. The relevant portion of § 1738 provides that: Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

from state courts and grant exclusive jurisdiction in the bankruptcy courts." *Spilman*, 656 F.2d at 226 (citing *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)).

The *Spilman* court then went on to conclude that collateral estoppel may apply to dischargeability determinations based on state court judgments as long as certain requirements are met. The court made this determination based solely on federal law, and without any discussion of § 1738's requirement that state law apply. In doing so, *Spilman* excepted dischargeability determinations from § 1738. "The Sixth Circuit in *Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981) apparently recognizing that federal courts may choose not to grant full faith and credit, did not grant full faith and credit to the state court's findings . . . ." *In re Kurtz*, 170 B.R. at 599.

The Sixth Circuit followed the *Spilman* criteria in *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986), which reversed the bankruptcy court's granting of collateral estoppel in a dischargeability action, sending it back for review of the entire record. In *Wheeler*, the Sixth Circuit had the opportunity to follow the holdings of *In re Eadie* and *In re Byard*, relied on by the bankruptcy court in this action, but instead reaffirmed the principles set forth in *Spilman*. Accordingly, while *Spilman* did not expressly state an exception to § 1738 for dischargeability determinations, the holding further supports a conclusion that such an exception exists.

Other courts have also held that § 1738 does not apply to state court proceedings used as the basis for dischargeability actions. The court in *In re Kurtz* expressly held that there is such an exception. "Despite the arguments to the contrary, this court finds that there is a judicially created exception to § 1738 for dischargeability actions." *In re Kurtz*, 170 B.R. at 599. *Kurtz* also interpreted *Brown, supra*, as granting bankruptcy courts exclusive jurisdiction over dischargeability actions. Furthermore, the court found itself bound by the Sixth Circuit's ruling in *Spilman*, and thus, did not apply state law in determining the dischargeability question. A similar result occurred in *In re Calvert*, 177 B.R. 583 (Bankr.W.D.Tenn. 1995). *In re Calvert* considered and rejected the arguments presented in *In re Byard*, instead following *Brown* and *Spilman* in holding that bankruptcy court's have exclusive jurisdiction over dischargeability determinations. *In re Calvert*, 177 B.R. at 586.

*In re Hall*, 95 B.R. 553 (Bankr.E.D.Tenn. 1989) like the present case, concerned a bankruptcy court's application of collateral estoppel to a state court default judgment with respect to a dischargeability determination. The *Hall* court considered *Marrese, Brown*, and *Spilman* and concluded that an exception did exist to the general rule that state law governs the preclusive effect of a state court default judgment. *In re Hall*, 95 B.R. at 555–58. The court stated that, "[t]he policy is that neither a creditor nor a debtor should be required to have dischargeability issues tried in a prebankruptcy lawsuit." *Id.* at 557. Furthermore, "[r]equiring either the debtor or creditor to litigate before bankruptcy in order to preserve the question of dischargeability of the alleged debt is contrary to the policy of the bankruptcy law as pointed out in *Brown v. Felsen*." *Id.* at 558.

In light of this precedent, this court concludes that there is a judicially created exception to § 1738 for dischargeability determinations in bankruptcy courts. Thus, a bankruptcy court is not bound by state law when deciding whether to give preclusive effect to state court judgments relating to § 523 dischargeability issues. However, having decided that state law is not controlling, this court still must determine the preclusive effect to be given to prior state court decisions by bankruptcy courts making dischargeability determinations.

### B. *Spilman v. Harley*

The Sixth Circuit set out the standard under federal law for determining the preclusive effect of state court judgments on dischargeability actions in *Spilman, supra*. In *Spilman*, the court refused to apply the doctrine of collateral estoppel to a state court judgment because it was unclear whether the matters underlying the state court judgment had been "actually litigated." *Spilman*, 656 F.2d at 228. The court ruled "[c]ollateral estoppel requires that the precise issue in the

later proceedings have been raised in the prior proceeding, that the issues were actually litigated, and that the determination was necessary to the outcome." *Id.*[3] The *Spilman* court also stated in its discussion of the actually litigated requirement that, "[i]f the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court." *Spilman*, 656 F.2d at 228. *Spilman*, however, did not involve a default judgment, but rather a summary judgment. Nonetheless, taken literally, *Spilman* seemingly precludes satisfaction of the "actually litigated" requirement by any state court default judgment as a matter of law. This was the holding of *In re Kurtz*, in which a party argued that a state default judgment precluded relitigation of a dischargeability issue. "On balance, proper respect for precedent, and in particular, the literal words of the Sixth Circuit requires this court to therefore conclude that default judgments per se cannot be the basis for collateral estoppel." *In re Kurtz*, 170 B.R. at 601.

In *In re Calvert*, a case with facts similar to *Kurtz* and the present case, the court adopted the "actually litigated" standard of *Spilman*, but rejected the per se rule of *Kurtz*, stating "[t]his court is of the view that it is difficult, though not entirely impossible, for a prior state court default judgment to satisfy the "actually litigated" requirement to invoke the doctrine of collateral estoppel in a subsequent bankruptcy." *In re Calvert*, 177 B.R. at 587. However, in *Calvert*, the plaintiff failed to satisfy the "actually litigated" standard.

This court need not decide whether all default judgments necessarily fail the "actually litigated" standard. In the present case, there is absolutely no evidence of any actual litigation in support of the underlying nondischargeability issues. The record before this court cannot support a finding that the § 523 nondischargeability issues raised by appellee DFS were actually litigated in the state cir-

cuit court. The only issues apparently addressed were whether service was proper, and whether the appellant had actual notice. As to those two issues, the matter is clearly settled-service was proper and Wood had notice. However, there is no indication that any discussion or ruling was issued on the merits of the complaint, i.e. the allegations of fraud. Thus, DFS fails to satisfy the "actually litigated" requirement set forth in *Spilman*.

Put simply, DFS has failed to satisfy the requirements set forth in *Spilman*. Therefore, this court finds that the appellant's default judgment has no preclusive effect on the bankruptcy court. Accordingly, the bankruptcy court's ruling granting the plaintiff's motion for summary judgment is reversed.

### ORDER

Therefore, it is hereby **ORDERED** that the bankruptcy court's decision is **REVERSED** and hereby **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED.**

---

**3.** A footnote in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), foreshadows and further supports the "actually litigated" standard set forth in *Spilman*. The *Brown* Court noted "[i]f, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." *Brown*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979).